```
                  THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION

JOSEPH F. BEGGINS,              §
                                §
     Plaintiff,                 §
                                §
v.                              §  CIVIL ACTION NO. 4:17-cv-1541
                                §            (JURY)
CBRE CAPITAL MARKETS            §
OF TEXAS, L.P.,                 §
                                §
     Defendant.                 §
```

PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE LEE ROSENTHAL:

1. Plaintiff Joseph F. Beggins ("Beggins") was formerly employed by Defendant CBRE Capital Markets of Texas, L.P. ("CBRE") as the Chief Executive Officer of GEMSA Loan Services, L.P., an entity formed by a partnership between a CBRE subsidiary and GECIA Holdings, Inc.  When the partnership dissolved in 2015, Beggins agreed to oversee the transition in return for CRBE's promise to enter into a written retention agreement providing, in part, for a significant retention bonus.  When it became clear that CBRE did not intend to enter into the promised retention agreement, Beggins made a written claim for benefits under CRBE's Severance Plan which was denied.  Accordingly, Beggins brings this action to recover the damages, unpaid benefits and attorneys' fees owed to him under Texas common law as well as the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (2017).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 29 U.S.C. § 1132(f) (2017) and 28 U.S.C. § 1331 (2017).

3. Beggins brings this complaint in the district in which CBRE did business and where a substantial portion of the conduct charged herein occurred. Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (2017).

## PARTIES

4. Beggins is an individual residing in Houston, Harris County, Texas.

5. CBRE is a Texas limited partnership located and doing business in Houston, Harris County, Texas. CBRE has answered and appeared.

## BACKGROUND FACTS

6. CBRE provides real estate funding and services to developers and owners of commercial real estate properties.

7. Pursuant to a secondment agreement, Beggins was seconded by CBRE to GEMSA Loan Services, L.P., nka CBRE Loan Services, Inc. ("GEMSA"), a partnership between CBRE and GECIA Holdings, Inc. ("GECIA")[1] (the "Partnership"), from August of 2001 until his termination effective January 1, 2016, as Chief Executive Officer.

8. In 2015, GE announced that it intended to exit the

---

[1] GECIA is a wholly-owned direct subsidiary of General Electric Capital Services, Inc., which in turn is a wholly-owned, direct subsidiary of General Electric Company (collectively, "GE").

Partnership. Subsequently, CBRE presented Beggins with a Retention Agreement dated July 22, 2015 (the "Retention Agreement")[2] by which Beggins would be entitled to receive certain payments (the "Retention Payment") in exchange for, without limitation, execution of the Retention Agreement, his continued employment through the Retention Period, and execution of CBRE's General Release and Agreement (the "Release") "at the end of [his] employment," which date was not specified but no later than December 31, 2015.

9. The Retention Payment was to be, among other things, in lieu of any bonus consideration [Beggins] may have been eligible for under any GEMSA or CBRE bonus plan or CRBE's Severance Policy.[3]

10. At the time of these discussions, Beggins had been contacted regarding alternative employment opportunities. Additionally, Beggins was eligible to participate in CBRE's Severance Plan.[4] Nevertheless, Beggins relied on the promises and representations made by CBRE and continued to provide the agreed upon services to CBRE.

11. Initially, Beggins was not provided with a copy of the Release although the Retention Agreement stated that a "form copy of the [Release] is attached." Reference here to the Retention

---

[2] Undefined capitalized terms shall have the same meaning here as defined in the Retention Agreement.

[3] Historically, Beggins consistently received significant annual performance bonus compensation.

[4] CRBE's Severance Plan was established in 2008 and administered through CRBE's human resources department.

Agreement includes the Release.

12. Beggins proposed to CBRE that the Retention Agreement be edited to, without limitation, correct some factual items, identify GE as a partner in GEMSA, and require CBRE to affirm that it had GE's agreement (as CBRE's partner in the Partnership) to execute the documents.

13. Thereafter, Jeff Majewski ("Majewski"), CBRE's then Chief Operating Officer, advised Beggins to revise the document in redline format to reflect his proposed modifications and submit them to CBRE. To that end, Beggins edited the Retention Agreement and returned it to Majewski who told Beggins he would review his edits "with the partners and circle back ...."

14. On August 7, 2015, Beggins received a revised version of the Retention Agreement from Majewski. Several telephone calls between Beggins, Majewski and Chris Shamaly ("Shamaly"), CBRE's Division General Counsel at the time, followed attempting to clarify certain defined terms contained in the Retention Agreement and/or Release relating to "affiliates," Agents" and "Released Parties."

15. As CBRE was unable to respond definitively to Beggins' questions and concerns, Shamalay suggested that, in order to remove any doubt as to whether parties other than CBRE, including GE, were included as released parties, Shamalay directed Beggins to revise the Retention Agreement to address his concerns and submit it to

CBRE for further consideration.

16. As instructed, on August 12, 2015, Beggins forwarded his edits to Majewski and Shamaly, specifically, language specifically excluding "any General Electric or General Electric Capital Corporation employees, agents, subsidiary and affiliated entities, benefit plans, benefit plans' sponsors, fiduciaries, administrators, affiliates, and all successors and assigns of any of them." As before, there were no substantive revisions to those sections of the Retention Agreement relating to Beggins' continued (i) commitment to the Partnership; (ii) responsibilities during the Retention Period; or (iii) the Retention Payment.

17. Majewski informed Beggins that his edits had been sent on to Nadine Chang ("Chang"), Vice President & Assistant General Counsel for CBRE Legal Services, for review and approval.

18. Approximately one (1) week later, Beggins followed up with Majewski with regard to the status of Chang's review of the Retention Agreement. Majewski instructed Beggins to contact Chang directly.

19. On August 24, 2015, Chang informed Beggins that she hoped to be able to get back to him shortly in connection with his proposed edits to the Retention Agreement.

20. Beggins continued to follow up with CBRE on the status of the Retention Agreement in order to obtain some "clarity on the question of the retention of [his] services." However, there was

no response from CBRE until September 16, 2016, when Chang sent Beggins the following communication:

> "Apologies for the delay. We will be updating the retention and general release agreement that you marked up and returned to us. We will not accept the change that you made that indicates that GE Corporation and GE Capital are excluded from the arbitration agreement or release, however, I believe we are close to agreement on the other changes that you made."

21. Based on Chang's representations above, Beggins expected to receive a document for signature incorporating his proposed revisions but for the exclusionary GE language which he was prepared to execute and return to CBRE.

22. Throughout his discussions with CBRE attempting to finalize the Retention Agreement, Beggins continued to provide services to the Partnership as CEO of GEMSA pursuant to the expectations outlined in the Retention Agreement.

23. Simply put, Beggins performed all conditions precedent in order to be entitled to receive the Retention Payment at the conclusion of the Retention Period. As such, Beggins anticipated that he would be compensated, as agreed.

24. However, CBRE, despite its representations and promises to the contrary, failed and refused to pay Beggins the Retention Payment despite Beggins' performance under the Retention Agreement.

25. As a result, Beggins made a written claim for benefits under CBRE's Severance Plan (the "Plan"). The Plan is a welfare benefit plan offered to CBRE employees and administered by CBRE.

26. To date, Beggins has not received either the promised Retention Payments or any benefits under the Severance Plan.

## FIRST CAUSE OF ACTION

### Negligent Misrepresentation

27. To establish a claim for negligent misrepresentation, a plaintiff must show that:

   a. a defendant made a representation to a plaintiff in the course of the defendant's business or in a transaction in which the defendant had an interest;

   b. the defendant supplied false information for the guidance of others;

   c. the defendant did not exercise reasonable care or competence in obtaining or communicating the information;

   d. the plaintiff justifiably relied on the representation; and

   e. the defendant's negligent misrepresentation proximately caused the plaintiff's injury.

28. As more particularly described above, CBRE's conduct constitutes negligent misrepresentation under Texas law, which conduct was directly and approximately the cause of actual damages to Beggins.

## SECOND CAUSE OF ACTION

### Promissory Estoppel

29. In addition, and without waiver of the foregoing, CBRE is liable to Beggins for his damages based on promissory estoppel which requires that a plaintiff demonstrate the following:

    a.    the defendant made a promise to the plaintiff;

    b.    the plaintiff reasonably and substantially relied on the promise to his detriment;

    c.    the plaintiff's reliance was forseeable by the defendant; and

    d.    injustice can be avoided only by enforcing the defendant's promise.

30. As more particularly described in detail above, CBRE promised Beggins that if he refrained from participating in the Plan, did not seek payment of his bonus, and continued to perform work on behalf of CBRE, it would enter into a written Retention Agreement providing for certain Retention Payments to Beggins through the Retention Period. Otherwise, Beggins would have collected the benefits offered to CBRE employees under the Plan and pursued his opportunities for subsequent employment.

31. Instead, Beggins reasonably and substantially relied to his detriment on CBRE's promises and representations in that Beggins refrained from accepting other employment opportunities, refrained from immediately claiming benefits under the Plan, and continued to perform work on behalf of CBRE. In addition, and in connection with his decision to continue his employment with CBRE, Beggins further relied on CBRE's representations that his agreement would be reduced to writing.

32. As a result of Beggins' detrimental reliance on CBRE's representations and promises, Beggins is entitled to recover his actual damages, including the bonus payments and/or severance

payments he would have otherwise received as well as any lost wages Beggins would have earned in subsequent employment.

33. Additionally, Beggins is entitled to reasonable attorneys' fees and the costs of this action.

### THIRD CAUSE OF ACTION

### Denial of ERISA Benefits

34. As an employee of CBRE, Beggins was entitled to participate in CBRE's Severance Plan. In that regard, Beggins made a written claim for benefits under the Plan which was denied. As such, Beggins seeks to recover all benefits due to him under the Plan pursuant to 29 U.S.C. § 502(a)(1)(B)(2017).

35. Additionally, Beggins is entitled to reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. § 502(g)(1) (2017).

### FOURTH CAUSE OF ACTION

### Breach of Oral Agreement

36. CBRE promised to pay Beggins the Retention Payment if he agreed to oversee the windup of GEMSA from July, 2015 through December 31, 2015. Although Beggins performed his obligations pursuant to the agreement, he was not paid the Retention Payment promised by CBRE.

37. As such, CBRE failed and refused to honor the terms of the agreement. CBRE's breach of the oral agreement has resulted in harm and damages to Beggins for which he now sues.

JURY DEMAND

38. Beggins requests a trial by jury.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Beggins prays that Defendant CBRE Capital Markets of Texas, L.P., be cited to appear and answer and on final trial Beggins be awarded judgment against Defendant CBRE Capital Markets of Texas, L.P., as follows:

a. actual damages;

b. reasonably attorneys fees;

c. costs of Court;

d. prejudgment and post-judgment interest on the amounts awarded above at the highest rate allowed by law; and

e. such additional relief to which Beggins may show himself justly entitled.

Respectfully submitted,

/S/ Mark Siurek
Mark Siurek
TBA# 18447900
Fed ID# 9417
3334 Richmond Avenue, Suite 100
Houston, Texas  77098
713-522-0066 (telephone)
713-522-9977 (fax)
msiurek@warrensiurek.com

ATTORNEY-IN-CHARGE FOR PLAINTIFF

```
                            OF COUNSEL:

                            WARREN & SIUREK, L.L.P.
                            Patricia Haylon
                            TBA# 09281925
                            Fed ID# 13941
                            3334 Richmond Avenue, Suite 100
                            Houston, Texas 77098
                            713-522-0066 (telephone)
                            713-522-9977 (fax)
                            thaylon@warrensiurek.com
```

CERTIFICATE OF DELIVERY

    I hereby certify that a true and correct copy of the foregoing Plaintiff's First Amended Complaint was sent to opposing counsel on November 30, 2017, properly addressed as follows by fax and email:

R. Rogge Dunn (rogge@clousedunn.com)
John Lynch (jlynch@clousedunn.com)
Clouse Dunn LLP
1201 Elm Street, Suite 5200
Dallas, Texas  75270
214-220-3833 (fax)

```
                            /S/ Mark Siurek
                            Mark Siurek
```