IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH F. BEGGINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1541 |
| | § | |
| CBRE CAPITAL MARKETS OF TEXAS L.P., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION ENTERING
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.    The Issues**

Joseph Beggins sued his former employer, CBRE Capital Markets of Texas, L.P., asserting claims for negligent misrepresentation and wrongful denial of ERISA benefits. After discovery, CBRE moved for summary judgment, Beggins responded, and CBRE replied. (Docket Entry Nos. 16, 19, 20). The court granted summary judgment dismissing Beggins's negligent misrepresentation claim and denied summary judgment dismissing Beggins's ERISA claim. (Docket Entry No. 27). The court identified two factual disputes material to the ERISA claim: whether CBRE's Severance Pay policy, No. 04.07.02, was an ERISA-qualified plan; and whether Beggins was entitled to benefits under the Severance Pay policy.

A bench trial was held to resolve the remaining issues. The parties submitted exhibits and presented argument. Jeff Majewski, a GEMSA Loan Services board member, and Beggins testified. Based on the pleadings, briefs, exhibits, testimony, arguments of counsel, and the applicable law, the court finds and concludes that CBRE's Severance Pay policy, No. 04.07.02, is an ERISA-

1

qualified plan, and that Beggins was not entitled to benefits under the Severance Pay policy because he did not sign the release required to receive the benefits.

The reasons are explained in detail below.

## II.     Findings of Facts

### A.     Background

GEMSA Loan Services was a partnership between a CBRE subsidiary and a General Electric Corporation subsidiary. Beggins served as GEMSA's second chief executive officer from August 2001 to January 2016. During this time, Beggins was a CBRE employee and was paid by CBRE. Under CBRE's Severance Pay policy, Beggins was an "HCE"—a Highly Compensated Employee— because his annual base salary was $100,000 or more. (Docket Entry No. 39 at 127).

In April 2015, the General Electric subsidiary decided to leave the GEMSA partnership, requiring a reduction in force. Beggins was terminated on January 1, 2016.

CBRE provided Beggins a general release before his termination. The CBRE-drafted release stated:

> Employee does hereby, and for Employee's heirs, legal representatives, agents, successors in interest, and assigns, irrevocably and unconditionally release, acquit, and forever discharge CBRE and all of its Agents . . . of and from all claims, actions, causes of action, rights, demands, debts, obligations, damages, or accounts of whatever nature arising through the date hereof . . . which Employee has against [CBRE and all of its Agents] by reason of or arising out of Employee's employment with CBRE or any other matters of whatever nature, whether known or unknown . . . .

(Docket Entry No. 16-1 at 11).

The CBRE Severance Pay policy made signing a CBRE-provided release a condition to receiving severance pay. Section II.B stated: "As a condition of receiving any severance pay pursuant to this Severance Pay Policy, an eligible employee must sign in advance of receiving any

2

severance benefits a full and complete release of all claims against the Company ("Release") as prepared by the company."  (Docket Entry No. 39 at 122).

Beggins consulted with an attorney and sent CBRE a revised release.  His revision defined the party released as CBRE, excluding "and all of its Agents."  Beggins wanted to both collect his severance pay and preserve any claims he might have against General Electric.  In a series of emails and other communications, CBRE rejected Beggins's proposed draft; Beggins sent a second proposed release draft to Majewski, again limiting the released parties to CBRE and excluding General Electric and other CBRE affiliates; and Nadine Chang, CBRE's assistant counsel, responded that CBRE would still not accept Beggins's new proposed draft.

CBRE sent Beggins a revised release stating: "For the avoidance of doubt, General Electric Company, General Electric Capital Corporation and all of their affiliates are 'Released Parties' under the terms of this Agreement."  (Docket Entry No. 16-1 at 129).  Beggins did not sign this release.  Rather, he made clear his intent not to sign any release unless General Electric was excluded from the definition of the parties released.  CBRE made clear its intent to refuse this request and insisted that any release cover CBRE and its agents, including General Electric.

On April 20, 2016, Beggins applied for benefits from General Electric under the General Electric Pension Plan, General Electric Supplementary Pension Plan, General Electric Savings and Security Program, General Electric Layoff Benefit Plan, and General Electric Healthchoice for Retirees Plan.  On June 7, 2016, the General Electric Pension Board denied Beggins's claim.  On July 14, 2016, after General Electric denied his benefits claim, Beggins sent Majewski a letter demanding severance compensation and benefits from CBRE.  Beggins did not receive a response.  He sued in state court in March 2017, and CBRE removed.  (Docket Entry Nos. 1, 1-1 at 4).

### B. CBRE's Severance Pay Policy Is An ERISA-Qualified Plan

CBRE's United States Employee Handbook states that CBRE "has an ERISA-qualified severance plan should employment end due to a job elimination or reduction in force." (Docket Entry No. 39 at 156). CBRE nonetheless argues that this severance pay policy is not an ERISA-qualified benefit plan.

Under ERISA, every employee benefit plan must:

(1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter;

(2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105(c)(1) of this title);

(3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan; and

(4) specify the basis on which payments are made to and from the plan.

29 U.S.C. § 1102.

The cases provide details about the criteria for an ERISA-qualified plan. In *Gomez v. Ericsson, Inc.*, 828 F.3d 367 (5th Cir. 2016), the Fifth Circuit held that "the existence or nonexistence of an 'ongoing administrative program' . . . is the key determinant of whether severance plans are governed by ERISA." *Id.* at 371. "Even for plans that result in only a lump-sum payment, that administrative scheme can be found in a number of other features that require discretion: the eligibility determination; calculations of the payment amount (such as deductions and detailed formulas); the provision of additional services beyond the severance payment (such as insurance); and the establishment of procedures for handling claims and appeals." *Id.* (citing *Fort Halifax Packing Co. v. Coyne*, 428 U.S. 1 (1987).

CBRE's Severance Pay policy satisfies the 29 U.S.C. § 1102 requirements. The policy creates a severance-pay scheme with procedures for determining employee eligibility, severance pay amounts, administration of those amounts, and payment. Section II.A allocates operation and administration responsibilities to CBRE's Human Resources Department. (Docket Entry No. 39 at 122). Section II.C provides a procedure for CBRE to amend the policy. *Id.* Sections II.E, III.C, and IV.D identify employees eligible to receive a severance payment. *Id.* at 123–24, 126–27, 129–30. Sections III.B and IV.C give the plan administrators guidance on calculating severance pay amounts. *Id.* at 125–29.

Second, the Severance Pay policy creates an "ongoing administrative program." CBRE, through its Human Resources Department in its role as administrator of the Severance Pay policy, has discretion to determine employee eligibility and payment amounts, and to modify the plan. Section II.C states that CBRE "reserves the right to withdraw, rescind, amend, revise and/or change, at any time, with or without notice, any and all provisions" of the policy. *Id.* at 122. Section III.A states that, at least as to non-Highly Compensated Employees, CBRE "in its sole and absolute discretion, reserves the right to make exceptions" to the policy. *Id.* at 125. Under Section IV.C.1.iii, Highly Compensated Employees like Beggins may be "eligible to receive a discretionary, pro-rated target bonus." *Id.* at 128. Sections IV.C.2 and IV.D provide discretion to determine whether an employee is an eligible Highly Compensated Employee and whether they have been terminated "for cause." *Id.* CBRE's Severance Pay policy contains an ongoing administrative scheme. The court finds and concludes that the Severance Pay policy is an ERISA-qualified plan.

**C.    Beggins Is Not Entitled To Benefits Under CBRE's Severance Pay Policy**

Section II.B states: "[a]s a condition of receiving any severance pay pursuant to this Severance Pay Policy, an eligible employee must sign in advance of receiving any severance

5

benefits a full and complete release of all claims against the Company as prepared by the Company." *Id.* at 122. The policy defines "the Company" as CBRE. *Id.* Beggins argues that CBRE's insistence on defining the released parties as "CBRE and its Agents" violates the policy definition and makes CBRE's refusal to pay him in severance an ERISA violation and a breach of contract. Beggins's argument is unpersuasive. CBRE's inclusion of "all of its agents" in the general release form is consistent with Section II.B of the Severance Pay policy, which gives CBRE discretion to amend or revise any provision of the policy, including the conditions of receiving severance pay. *Id.*

In *Gomez*, the defendant company conditioned receiving severance pay on the return of company property. *Gomez*, 828 F.3d at 369–70. The plaintiff was denied severance benefits because he failed to satisfy that condition. He argued that the condition went beyond the requirements set out in the company's written severance policy. *Id.* at 374. The Fifth Circuit held that the return of property condition was "not inconsistent with the Plan to impose other conditions reasonably related to the termination of the employment relationship." *Id.* The plan considered in *Gomez*, like CBRE's Severance Pay policy, gave the plan administrator discretion to decide "all questions concerning the eligibility of any person to participate in this Plan." *Id.* CBRE's insistence on conditioning severance pay on a release of claims against it and its agents is consistent with its Severance Pay policy. A provision requiring Beggins to release his claims against CBRE and General Electric, CBRE's joint venture partner, in order to receive severance pay, was "an expected part of a satisfactory departure" from CBRE. *Id.*

Beggins refused to sign the release CBRE provided. Beggins instead sent an email to CBRE's chief operating officer, managing director, and assistant general counsel stating that he "would be willing to provide specific releases of claims against CBRE while reserving his claims against [General Electric]." (Docket Entry No. 16-1 at 137). The plan did not give Beggins the right

6

to refuse to sign a release that was within the policy terms and still get the severance. In order for Beggins to qualify for the severance benefits under the Severance Pay policy, he had to sign the document that released CBRE and its agents, including General Electric, from claims Beggins had against them. Beggins did not do so, and he was not entitled to the severance pay.

Beggins testified that he believed he would be entitled to severance pay even though he did not sign the release because he was willing to release CBRE, because his proposals were merely "counteroffers," and because CBRE could not redefine "Company." This testimony was not credible. CBRE made clear that it would not accept Beggins's proposals to exclude General Electric from the release. CBRE gave Beggins no indication that it would counter his counteroffer and waive the condition to sign under Section II.B. Beggins understood that signing the release, which included General Electric, was a condition to receiving severance pay. He was advised by counsel throughout. He still refused to sign.

### III. Conclusions of Law

The court concludes that:

- CBRE's Severance Pay policy, No. 04.07.02, is an ERISA-qualified plan.

- Beggins is not entitled for benefits under the Severance Pay policy because he did not sign CBRE's general release form as needed to satisfy the condition precedent to receiving severance pay under the policy.

An order of final judgment will issue separately.

SIGNED on August 7, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge